**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TIMOTHY NELSON REEVES,

    Defendant - Appellant.

No. 11-1200
(D.C. No. 94-CR-00231-LTB-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Timothy Nelson Reeves challenges the district court's revocation of his supervised release and modification of the terms of his pending supervised release based on vindictive prosecution and failure to rule on his objections, respectively. United States v. Reeves, No. 94-cr-00231 (D. Colo. Apr. 25, 2011); 1 R. 102-05. Mr. Reeves received an additional ten months of imprisonment to be followed by twenty-six months of supervised release, including a condition that he participate in a sex offender treatment program. We have jurisdiction under 28 U.S.C. §

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1291 and 18 U.S.C. § 3742(a), and we affirm.

Background

Mr. Reeves was convicted in 1994 of mailing a threatening communication based upon sexual demands made in a letter to a woman he did not know. 18 U.S.C. § 876; 4 R. 3. He served eighteen months for that conviction, consecutive to sentences for other state crimes, and then started a three-year term of supervised release on February 12, 2009. Id. at 3-4. On August 3, 2010, while on supervised release, Mr. Reeves admitted to Colorado authorities that he had left sexually explicit voicemail messages with a woman he did not know, in violation of Colo. Rev. Stat. § 18-9-111. 1 R. 74. He was charged with, and ultimately convicted of, a misdemeanor in state court for that offense. Prior to that, Mr. Reeves' probation officer, Garret Pfalmer, learned of Mr. Reeves' admission and initially filed a petition to modify conditions of release. 1 R. 5-6. In that petition, Mr. Pfalmer asked the court to order Mr. Reeves to complete a sex offender evaluation and, if recommended by the evaluator, to modify Mr. Reeves' conditions of release to include mandatory sex offender treatment. Id.

The district court ordered Mr. Reeves to undergo an evaluation and, following the recommendation of the evaluator, held a hearing at which Mr. Reeves was ordered to undergo sex offender treatment as one of his conditions of release. 1 R. 11-12; 3 R. 3; 2 R. 28-35. At that hearing, counsel for Mr. Reeves

indicated that the terms of treatment were unclear, and that he would need to see the proposed treatment contract before he could advise Mr. Reeves to agree.  Id. Once Mr. Pfalmer provided that contract—the terms of which he described as non-negotiable[1]—counsel for Mr. Reeves filed several objections to various contractual provisions.  1 R. 16-72.   Before the district court could hold a hearing on Mr. Reeves' objections, however, Mr. Pfalmer filed a petition for revocation of supervised release.  1 R. 73-74.  The district court ultimately revoked Mr. Reeves' supervised release as noted above.  1 R. 102-05.

On appeal, Mr. Reeves argues vindictive prosecution—namely, that Mr. Pfalmer filed the revocation petition because Mr. Reeves challenged what he believed to be unconstitutional provisions of the treatment contract.  Aplt. Br. 29-34; Aplt. Rep. Br. 1-12.  Mr. Reeves also argues that the district court erred in failing to consider his objections to that treatment contract, as he likely will be required to sign the same contract when he is released from his current term of incarceration.  Aplt. Br. 34-35; Aplt. Rep. Br. 12-14.

---

[1]  Mr. Pfalmer specifically explained, before providing the contract to Mr. Reeves: "The [treatment agency] would have a standardized treatment contract that any and all individuals that would enter treatment services would sign into and agree to."  2 R. 34.  Counsel for the government, at the revocation hearing, also reiterated: "[I]t is clear, in my perception, that the defendant wants to renegotiate a contract that essentially is not renegotiable."  2 R. 60.

<u>Discussion</u>

A.     <u>Vindictive Prosecution</u>

Mr. Reeves argues that the district court erred by failing to find vindictive prosecution on the part of Mr. Pfalmer.  This is not a traditional vindictive prosecution case: vindictiveness and retaliation claims generally involve a prosecutor or a judge.  For example, a judge may not sentence a defendant more harshly following a successful appeal without providing "articulated reasons based on objective information," and a prosecutor may not file felony charges "when a convicted misdemeanant exercises his statutory appellate right to trial de novo."  <u>United States v. Raymer</u>, 941 F.2d 1031, 1040 (10th Cir. 1991) (citing <u>North Carolina v. Pearce</u>, 395 U.S. 711, 726 (1969); <u>Blackledge v. Perry</u>, 417 U.S. 21, 27-29 (1974)).  We have not found a reported case in which the prosecutorial vindictiveness calculus was applied to a probation officer.[2]

We need not resolve this important question, however.  Assuming—without

---

[2]  This case involves the actions of a federal probation officer in 2010 and 2011.  Mr. Reeves cited cases relating to state parole boards, which are fundamentally different than the federal probation department.  <u>See</u> <u>Nulph v. Cook</u>, 333 F.3d 1052 (9th Cir. 2003) (body at issue was the Oregon State Board of Parole, a state entity which had authority to dictate sentence terms); <u>Thompson v. Armontrout</u>, 808 F.2d 28 (8th Cir. 1986) (same for the Missouri Parole Board, and the Eighth Circuit expressly refused to decide the present issue).  Mr. Reeves does provide one citation involving parole at the federal level, but it, too, is distinguishable.  <u>See</u> <u>Marshall v. Lansing</u>, 839 F.2d 933 (3d Cir. 1988) (body at issue was the United States Parole Commission, which at that time—23 years ago—had authority to impose penalties for disciplinary infractions).  The question whether vindictive prosecution applies to probation officers apparently remains open, both in this circuit and generally.

deciding—that vindictive prosecution could apply to a probation officer, Mr. Reeves has failed to establish vindictive prosecution in this case. In evaluating a claim of prosecutorial vindictiveness, we "must determine whether the [party at issue] engaged in conduct that would not have occurred but for [its] desire to punish the defendant for exercising a specific legal right." United States v. Sarracino, 340 F.3d 1148, 1178 (10th Cir. 2003). We review factual findings relating to vindictive prosecution for clear error, and legal determinations de novo. Raymer, 941 F.2d at 1039. Mr. Reeves has the burden of proof, and must "establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." Id. at 1040. If Mr. Reeves establishes either, the government must then "justify its decision with legitimate, articulable, objective reasons." Id.

      1.     Presumption of Vindictiveness

A prosecuting authority may not punish a defendant for exercising a specific legal right, and an inference that the prosecution has done so may lead to a presumption of vindictiveness. Sarracino, 340 F.3d at 1178. Mr. Reeves' claim of vindictiveness rests entirely on pre-trial (or, here, "pre-hearing") conduct, for which the Supreme Court generally has refused to allow a presumption of vindictiveness. See United States v. Goodwin, 457 U.S. 368, 384 (1982). Mr. Reeves argues that the chain of events in this case—Mr. Pfalmer attempts to modify supervised release, Mr. Reeves asserts his constitutional rights in arguing

- 5 -

against some of the proposed modifications, and Mr. Pfalmer files for revocation—allows for an inference of vindictiveness.

We disagree. It is well-settled that an initial charging decision does not freeze future conduct. Sarracino, 340 F.3d at 1177. "[T]he presumption is without application when a prosecutor offers a defendant a chance to plead guilty or face more serious charges, provided the prosecutor has probable cause on the more serious charges and the defendant is free to accept or reject the offer." Raymer, 941 F.2d at 1040 (citing Bordenkircher v. Hayes, 434 U.S. 357, 363-64 (1978)). Neither does the presumption apply "when a defendant declines to plead guilty to misdemeanor charges in order to exercise his right to a jury trial, and a different prosecutor obtains a felony indictment." Id. (citing United States v. Goodwin, 457 U.S. 368, 382-84 (1982)).

Mr. Reeves' experience was more akin to a failed plea negotiation than prosecutorial vindictiveness. As Mr. Reeves notes in his brief, Mr. Pfalmer could have moved to revoke supervised release immediately upon learning of the new offense. Aplt. Br. 6 ("Commission of the new offense was a Grade C violation of Mr. Reeves' conditions of supervised release and provided a clear basis for revocation."). Instead, Mr. Pfalmer pursued a sex offense specific evaluation, and the evaluator recommended sex offender treatment. Before presenting the treatment contract to Mr. Reeves, Mr. Pfalmer made clear that the contract was, for practical purposes, non-negotiable. Mr. Reeves objected to the contract, and

Mr. Pfalmer decided to instead pursue revocation. Given the need for a response in this case, we cannot find that the district court clearly erred in concluding that Mr. Pfalmer did not act vindictively.

Mr. Reeves argues that his claim of vindictiveness is further supported by the fact that he always explained that he was willing to undergo sex offender treatment, regardless of the outcome of his objections, but first wished to explain his concerns to the district court. This fact, he argues, further supports the inference that Mr. Pfalmer was motivated only by vindictiveness. We disagree. Particularly given the Supreme Court's reluctance to expand the presumption of vindictiveness in a pre-trial setting, we find no error.

2.      Actual Vindictiveness

Mr. Reeves alternatively argues that Mr. Pfalmer's statement—that the decision to file for revocation was "based on" Mr. Reeves' objections—establishes actual vindictiveness. Again, we think Mr. Reeves' experience was more akin to a failed plea negotiation. "Not only is a presumption of vindictiveness inapplicable to the 'give-and-take' of plea negotiations, but even a showing of actual vindictiveness does not necessarily warrant dismissal" of a charge. Sarracino, 340 F.3d at 1177. Our cases make clear that a prosecutor has full discretion to file additional charges—even relying on the same evidence—"based on" a defendant's decision to go to trial. Id. at 1178. Recognizing that "the decision to prosecute may not be intentionally based upon .

. . the exercise of protected statutory and constitutional rights," id. (citing Wayte v. United States, 470 U.S. 598, 608 (1985)), we disagree that Mr. Pfalmer's use of "based on" necessarily implies retaliation based on the exercise of any right. On this record, the district court could have concluded that Mr. Pfalmer retaliated against Mr. Reeves for exercising his constitutional rights. But it also could have concluded—as it did—that Mr. Pfalmer's "motivation was one for public safety and protection of the public, given the nature of the charge" at issue. 2 R. 76. Implicit in that finding is the conclusion that Mr. Pfalmer's use of "based on" was not retaliatory, but simply evinced by the conclusion that Mr. Reeves' challenges to the proposed modifications made such modifications unworkable. Given those options, the district court did not clearly err by finding that Mr. Pfalmer did not vindictively prosecute Mr. Reeves.[3]

B.    Objections to Pending Conditions of Release

Mr. Reeves also argues that the district court erred by refusing to consider his specific objections to the proposed treatment contract, as he likely will have to sign that same contract as a condition of his supervised release. Here again, an

---

[3] Mr. Reeves also notes that Mr. Pfalmer expressly reserved the right to file a revocation petition, but only in the event that Mr. Reeves was convicted on the Colorado state charges. Aplt. Rep. Br. 4. Mr. Reeves argues that Mr. Pfalmer's filing for revocation prior to the eventual Colorado conviction further supports his claim of vindictiveness. Id. As the gravamen of this opinion makes clear, however, Mr. Pfalmer had discretion to file for revocation at any time; his decision to first attempt modification did not foreclose his other options, even if he only expressed one of those options.

important distinction must be made: Mr. Reeves objected to the terms of the treatment contract, but *not* to the imposition of mandatory sex offender treatment generally. The court imposed only mandatory sex offender treatment, not the specific contract to which Mr. Reeves objected, and we therefore find that this argument is not yet ripe for consideration. Mr. Reeves, as a result of being incarcerated, is not subject to that contract now, and necessarily would not have been for ten months following the district court's revocation due to his sentence. Perhaps he will be presented with that contract when his incarceration ends, but this is not assured; in the meantime, we cannot say that the district court erred by failing to render what would amount to an advisory opinion on the constitutionality of that document.[4] Mr. Reeves is free to challenge the proposed treatment contract if and when he is presented with it following his incarceration. See 18 U.S.C. § 3583(e)(2).

     AFFIRMED.

                Entered for the Court

                Paul J. Kelly, Jr.
                Circuit Judge

---

[4] The court specifically required Mr. Reeves to "participate in and successfully complete an approved program of sex offender evaluation and treatment . . . . The defendant shall comply with the rules and restrictions specified by the treatment agency." 1 R. 105. Until it is clear to which agency Mr. Reeves will be assigned, as well as what contract that agency will present, any challenge to a *potential* requirement cannot be ripe.